**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

MAR 28 2012

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 10-30336 |
| Plaintiff - Appellee, | D.C. No. 3:07-cr-00001-HA-1 |
| v. | |
| ZELJKO BOSKOVIC, | MEMORANDUM[*] |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the District of Oregon
Ancer L. Haggerty, Senior District Judge, Presiding

Argued and Submitted March 6, 2012
Portland, Oregon

Before: W. FLETCHER, FISHER and BYBEE, Circuit Judges.

Zeljko Boskovic appeals his convictions for possessing a green card

procured by means of material false statements and making material false

statements in a matter within the jurisdiction of the Department of Homeland

Security. *See* 18 U.S.C. §§ 1546(a), 1001(a). We affirm.

---

[*]This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

*1. Motion to Suppress Statements as Involuntary.*

Statements made to law enforcement officers are "involuntary" if, "considering the totality of the circumstances, the government obtained the statement[s] by physical or psychological coercion or by improper inducement so that the suspect's will was overborne." *United States v. Leon Guerrero*, 847 F.2d 1363, 1366 (9th Cir. 1988). Based on the totality of the circumstances, the government has shown by a preponderance of the evidence that the challenged statements made to law enforcement officers were not involuntary. We affirm the district court's denial of Boskovic's motion to suppress.

*2. Motion to Exclude Statements Made Through Interpreter.*

The Confrontation Clause prohibits admission of testimonial hearsay in criminal cases unless the declarant is unavailable and the defendant has been afforded a prior opportunity for cross-examination. *See Crawford v. Washington*, 541 U.S. 36, 68-69 (2004). Where an interpreter is a mere language conduit and the statements are viewed as the defendant's own, however, they do not constitute inadmissible hearsay and their admission does not violate the Confrontation Clause. *See United States v. Nazemian*, 948 F.2d 522, 525-28 (9th Cir. 1991). Considering the factors set forth in *Nazemian*, the interpreter here acted only as a language conduit. The statements were therefore directly attributable to Boskovic

2

and, as party admissions under Federal Rule of Evidence 801(d)(2), they were not hearsay. Their admission did not violate the Confrontation Clause.

Even if the district court erred in admitting the statements, however, given the cumulative nature of the challenged testimony and the additional evidence of guilt, any error was harmless. *See United States v. Orozco-Acosta*, 607 F.3d 1156, 1161-62 (9th Cir. 2010).

### 3. *Prosecutor's Rebuttal Remarks.*

Boskovic contends that the prosecutor's rebuttal remarks were improper because he vouched for the key witness and the government, and improperly aroused the passions and prejudices of the jury by referring to a mass murderer (the Son of Sam) and urging the jury to protect the reputation of the United States refugee program. Because Boskovic did not object to the prosecutor's statements at trial, we review his claims for plain error. *See United States v. Doss*, 630 F.3d 1181, 1193 (9th Cir. 2011). We "reverse for plain error only if an error was obvious, affected substantial rights, and a miscarriage of justice would otherwise result." *Id*. In most cases, the error must have "affected the outcome of the district court proceedings." *United States v. Olano*, 507 U.S. 725, 734 (1993).

*a. Vouching.* "Vouching consists of placing the prestige of the government behind a witness through personal assurances of the witness's veracity, or

suggesting that information not presented to the jury supports the witness's testimony." *United States v. Necoechea*, 986 F.2d 1273, 1276 (9th Cir. 1993). The prosecutor's statement, "I put it to you that [Agent] Ted Weimann would rather chew off his arm than lie," although hyperbolic, did not rise to the level of improper vouching when viewed in the context of the rebuttal and the trial as a whole. *See United States v. Wilkes*, 662 F.3d 524, 540 (9th Cir. 2011) ("[P]rosecutors are permitted to respond to defense counsel's attempts to impeach the credibility of government witnesses."); *United States v. Weatherspoon*, 410 F.3d 1142, 1147 n.3 (9th Cir. 2005) ("In drawing the line between acceptable statements . . . and unacceptable statements . . . , we have been especially sensitive to the form of prosecutorial statements – so that use of the prefatory phrase 'I submit' has been preferred to the use of 'I think,' in part because the latter is more likely to lead the jury to give undue credit to the statement that follows . . . .").

The prosecutor also referred in rebuttal to a withdrawn charge and said, "There is plenty of evidence on the remaining theories in this case – ample evidence." Because this statement was made in response to defense counsel's reference in his own closing argument to the withdrawn charge, it did not constitute improper vouching for the strength of the government's case. *See Wilkes*, 662 F.3d at 539 (prosecutor's rebuttal explanation as to why the

4

government did not call a particular witness was "not improper" because it had been "expressly invited" by defense counsel's closing argument remarks concerning that witness).

*b. Passion and prejudice.* Prosecutors may not make comments calculated to arouse the passions or prejudices of the jury. *See Weatherspoon*, 410 F.3d at 1149. Nor may they call attention to a particular societal issue and ask the jury to "make a statement." *Id.* (quoting *United States v. Leon-Reyes*, 177 F.3d 816, 823 (9th Cir. 1999)) (internal quotation marks omitted). Here, in rebuttal, the prosecutor drew a comparison between Boskovic's case and the Son of Sam mass murders in New York City:

> Then we heard a string of character witnesses in this case, and I'm going to date myself a bit here with a quick story, and then I am going to sit down and let Judge Haggerty instruct you so you can have the case.
> But I'm reminded of the mass murderer Son of Sam. I want to make it clear that I'm not implying – I'm not drawing any analogy between the defendant and the Son of Sam. But years ago when I was a much younger man, there was a mass murder in New York City committed by someone who the media dubbed the Son of Sam.
> They were horrific murders. The media went around and interviewed all of Son of Sam's neighbors. They were stunned – absolutely stunned that this man who was apparently a quiet, respectful, law-abiding, truthful, whose dog wagged his tail when he came home at night, who had absolutely no outer traffic being a mass murderer could have committed these crimes. None of these character witnesses that you heard were there when the defendant went through the refugee process. I'll leave it to you to decide how much weight to give their testimony.

5

Boskovic contends that the statement was improper because the government had introduced "irrelevant and prejudicial information about war crimes" during the trial, and this final analogy left the jury with the idea that a parallel existed between Boskovic and the Son of Sam, not just concerning the character witnesses, but also concerning mass murder. The government responds that the statement was permissible because the prosecutor stated, "I'm not drawing any analogy between the defendant and the Son of Sam." We disagree. The prosecutor's "disclaimer" was disingenuous. The choice of a mass murderer's case appears calculated to raise the war crimes specter in the jury's mind, even though Boskovic was not charged with any war crimes. At best, the analogy was gratuitous, ill-considered and inflammatory. In a case that turned on the defendant's character and credibility, the analogy, invoked at the end of the government's closing argument, appears likely "designed to appeal to the passions, fears and vulnerabilities of the jury," which we have "consistently cautioned against." *Weatherspoon*, 410 F.3d at 1149. That said, given the curative instructions that followed, and the strength of the government's case otherwise, we cannot say this one ill-chosen argument was sufficient to "affect[] substantial rights" or result in a "miscarriage of justice." Accordingly, there was no plain error. *Doss*, 630 F.3d at 1193.

6

The prosecutor also evoked the reputation of the United States refugee program when asking the jury to return a guilty verdict. It is impermissible for "[a] prosecutor [to] urge jurors to convict a criminal defendant in order to protect community values, preserve civil order, or deter future law-breaking. . . . Jurors may be persuaded by such appeals to believe that, by convicting a defendant, they will assist in the solution of some pressing social problem." *Weatherspoon*, 410 F.3d at 1149 (quoting *United States v. Koon*, 34 F.3d 1416, 1443 (9th Cir. 1994)) (internal quotation marks omitted). Even if the remarks were improper, however, we conclude that they did not constitute plain error warranting reversal.

**AFFIRMED.**